UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

D-1  MICHAEL FRALEY,
                Defendant

Case No. 21-cr-20184

Hon. MATTHEW F. LEITMAN
United States District Judge

---

## United States' Response to Defendant's Motion to Revoke Detention Order

---

The United States opposes defendant Michael Fraley's motion for pretrial release because he poses a danger to the community and has failed to rebut the presumption in favor of detention. Undeterred by many custodial sentences since 2003, Fraley distributed about 25 grams of crystal methamphetamine during a controlled buy here. In doing so, he violated a bond condition in another drug-trafficking case and committed this offense one week after his discharge from parole in yet another case. Consistent with the rebuttable presumption of detention, the Pretrial Services recommendation, and the Magistrate's detention order, Fraley should be detained pending trial.

## I.      Procedural Background

A grand jury indicted Fraley for distributing five grams or more of methamphetamine this past December. (ECF No. 1, PageID.1-3). On March 23, 2021, the magistrate held a detention hearing and ordered Fraley detained pending trial. (ECF No. 23, PageID.41). The Magistrate found that Fraley not only failed to rebut the presumption of detention, but also that no conditions could reasonably assure his appearance or protect the community. *Id.* The factors the Magistrate emphasized included Fraley's extensive criminal history, his recent discharge from parole, his commission of this offense while on bond in a state-court drug case, his earlier violation of parole involving tampering with a tether, his substance abuse, his gang membership, and his lack of stable employment. *Id.* Fraley now seeks review of his bond status and is requesting pretrial release. (ECF No. 36, PageID.78).

## II.     Analysis

### A.      Standard of Review

A magistrate's order for detention may be reconsidered by the district court under 18 U.S.C. § 3145. Although the statute does not set forth the standard for review, it appears that the district court should make a *de novo* determination of the magistrate's order. The district court should not defer to the magistrate judge's ultimate conclusion, even if "the whole process [in the district court]…[does not]

start from scratch, as if the proceedings before the magistrate had never occurred." *United States v. Yamini*, 91 F.Supp.2d 1125, 1128 (S.D.Ohio, 2000) *quoting*, *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir.1990). Rather, "the point is that the district court is to make its own 'de novo' determination of facts, whether differed from or an adoption of the findings of the magistrate." *Id.* Thus, under § 3145(b) a district court is not required to engage in a plenary procedure, but some independent review of the magistrate's decision is required. *Id.* In reviewing the appeal, the court "may 'start from scratch' and hold a new hearing or review the transcripts of the proceedings before the magistrate." *United States v. Hammond*, 204 F.Supp.2d 1157, 1162 (E.D.Wis. 2002).

## B. 18 U.S.C. § 3142(e) – The Rebuttable Presumption of Detention

The Bail Reform Act of 1984 provides that a court shall order a defendant detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of defendant and the safety of any person and the community." 18 U.S.C. § 3142. The finding related to safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b).

A presumption favoring detention applies to Fraley. A rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community arises when there is probable cause to believe that the defendant committed an offense

for which the maximum prison term of ten years or more is prescribed under the Controlled Substances Act (21 U.S.C. §§ 801-904), 18 U.S.C. § 3142(e)(3)(A). Here, Fraley is charged with an offense that triggers a rebuttable presumption: distribution of methamphetamine, contrary to 21 U.S.C. § 841(a). Fraley acknowledged that he faces a maximum penalty of 40 years in prison. (ECF No. 11, PageID.25-26.)

The resulting presumption for detention imposes a "burden of production" on the defendant, and the government retains the "burden of persuasion." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). A defendant satisfies his burden of production when he comes forward with evidence that he does not pose a danger to the community or a risk of flight. *Id.* Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id., citing United States v. Mercedes*, 254 F.3d 433, 436 (2nd Cir. 2001). This is so because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945.

## C.    18 U.S.C. § 3142(g) Factors

In deciding whether there are conditions of release that will reasonably assure the safety of any other person and the community, the Court considers four

factors: (1) the nature and circumstances of the offense charged, including whether the offense involved a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, community ties, criminal history . . . among other factors; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

**1.     History and Characteristics of Defendant**

Fraley has a significant and lengthy criminal history. The chart below summarizes his criminal history based on information provided by the Pretrial Services Report:

| Year of Conviction | Charges | Disposition |
|---|---|---|
| 2003 | 1. Simple Assault<br>2. Injury to Real Property | Guilty of Count 2; Count 1 was dismissed. 30 days jail with 1 year of probation. |
| 2003 | 1. Drunk Driving<br>2. Operating without license | Guilty of both counts; 1 year probation. |
| 2003 | 1. Aggravated Domestic Violence<br>2. Resisting a police officer | Guilty of both counts; 3 years' probation. |
| 2007 | 1. Retail Fraud – 3rd | Guilty; fine. |
| 2007 | 1. Retail Fraud – 2nd | Guilty; 34 days jail. |
| 2008 | 1. Retail Fraud – 2nd | Guilty; 150 days jail. |
| 2008 | 1. Felony larceny from a motor vehicle | Guilty; 1 year in prison. |

| 2008 | 1. Receiving & Concealing a motor vehicle;<br>2. Larceny from a person | Guilty of both counts; 18 to 120 months in prison. |
|------|------|------|
| 2009 | 1. Felony Retail Fraud – 1st | Guilty; 15 to 90 months in prison. **Discharged from parole on Nov. 23, 2020.** |
| 2012 | 1. Retail Fraud – 3rd | Guilty; 90 days jail. |
| 2016 | 1. Check – insufficient funds $100 - $500 | Guilty; 335 days in jail. |
| 2017 | 1. Tampering with Electronic Monitoring Device | Guilty; 18 to 36 months in prison. **Discharged from parole on Nov. 23, 2020.** |
| 2019 | 1. Resisting a police officer | Guilty; 11 months in jail. |

Totaled up, Fraley has six felony and ten misdemeanor convictions spread out over 16 years. Probationary sentences have not deterred him. Jail sentences have not deterred him. Prison sentences have not deterred him. His unrelenting criminal activity shows that he is not deterred by the consequences that the criminal justice system metes out.

### *Recent violations of parole and bond conditions*.

Fraley was on parole in March 2020. (Ex. 1). On March 24, 2020, police officers executed a state search warrant in a house that Fraley was staying at. (Ex. 2). Officers encountered Fraley and codefendant Alexandria Dodge inside. *Id*. Fraley emerged from a bathroom, which prompted an officer to check there for drugs. *Id*. The officer saw "a baggy of suspected methamphetamine circling the toilet bowl as it was being flushed" and seized it. *Id*. The baggie weighed about 15

grams. *Id*. Officers also seized a wad of cash ($1,584.00), digital scales, packaging materials, and evidence indicative of counterfeiting money. *Id*.

Fraley admitted to selling methamphetamine earlier that day:

**INTERVIEW OF MICHAEL FRALEY:**
Detective Gorman and I interviewed Fraley after he requested to speak with me. The following interview was recorded. I advised Fraley of his Miranda Rights and he agreed to waive them and speak to me. Fraley stated that he mostly uses drugs but did admit to selling "here and there" since January. Fraley stated that he just got out of prison and only recently started doing this. I asked Fraley how much he sells per week. Fraley should his head and I asked, "gram or two a day?" and Fraley said yes. Detective Gorman asked Fraley when was the last time he made a sale and he replied "this morning". Detective Gorman asked him "how much did you sell" and Fraley responded, "a twenty". Fraley began to tell us that he buys an "8 ball" from "Beans" on the north side of flint.
I asked Fraley "did you flush the meth down the toilet when you heard us coming" and Fraley nodded his head up and down. Fraley also provided us with the passcode to his cell phone.

*Id.*

The Michigan Department of Corrections discharged Fraley from parole about eight months *after* this event, in November 2020, according to the Pretrial Services Report. In line with this, when federal agents executed a search warrant at the house Fraley used to sell the 25 grams of methamphetamine here, on December 8, 2020, agents found vivid evidence of Fraley's parole status hanging in a picture frame on the wall:



A closer view of his parole board order shows that Fraley's "parole expiration date" was November 23, 2020.



The state charged Fraley with a drug trafficking offense based on the search of his house in March 2020. (Ex. 3). Although Fraley pleaded guilty in that case to

a reduced charge, it remains unresolved because he later withdrew that guilty plea. (Ex. 4.) All the same, the state court set bond conditions at his arraignment, on March 27, 2020, that included "no drugs or alcohol." (Ex. 3). As alleged in the federal indictment here, Fraley distributed methamphetamine on December 1, 2020—*after* the state court ordered that Fraley not possess drugs while his case was pending and just one week after his discharge from parole.

### *Substance Abuse and Gang Affiliation*

To make matters even worse, Fraley admitted to pretrial services that he "uses this substance [methamphetamine] daily and reported his last date of ingestion occurred on the same day of his arrest." He also admitted that he first used methamphetamine about 15 years ago, when he was 25 years old. This shows both a serious addiction and still more admitted violations of bond conditions.

The FBI has identified Fraley as a person affiliated with the Spanish Cobras gang. Originating in Chicago, the Spanish Cobras "had been active in Flint since the early 1990s. The Spanish Cobras were primarily drug traffickers[.]" *People v. Gonzalez*, 663 N.W.2d 499, 504 (Mich. App. 2003*), disapproved on denial of appeal sub nom. People v. Guerra*, 671 N.W.2d 535 (Mich. 2003), and *disapproved on denial of appeal*, 671 N.W.2d 536 (Mich. 2003) (disapproved on unrelated grounds). "[P]olice officers discovered a photo album covered in *green and black, the Spanish Cobras' colors*. On the front of the album was Diaz's

9

photograph cut in a *diamond shape, a Spanish Cobras symbol*." *Id.* at 506.

(emphasis added). Among other tattoos, Fraley has a green-and-black diamond

tattoo near his eye and a diamond-shaped tattoo on his neck:



During the search of the house, on December 8, 2020, that Fraley sold the

methamphetamine from a week earlier, officers found a drawing of common

Spanish Cobras symbols (green and black cobra, diamond) on a pile of papers:



Committing felonies while on parole expresses an unwillingness or inability to follow terms of supervision. So too does violating bond conditions. This feature of Fraley's character alone dooms his claim that he can be relied on to follow pretrial release conditions. Combining this with a serious methamphetamine addiction, gang affiliation, and a 16-year history of unrelenting criminal activity forecloses any reasonable belief that he can be relied on to follow court orders.

### 2.    Nature and Circumstances of the Offense Charged

On December 1, 2020, Fraley intentionally distributed more than five grams of methamphetamine to another person. (ECF No. 1, PageID.1-3.) More specifically, Fraley distributed about 25 grams of crystal methamphetamine with a 98% purity. (Ex. 5). He did so inside a house during a controlled buy, which law enforcement recorded. The confidential source identified Fraley as the person who sold him the crystal methamphetamine for money.

One week later, law enforcement officers executed a search warrant at that same house. Inside, officers seized suspected drugs, digital scales, a firearm, cash, sandwich baggies, a Genesee County inmate ID band in Fraley's name, and a receipt for Fraley. Officers also photographed Fraley's MDOC parole discharge paperwork hanging on the wall, as shown above. Codefendant Dodge and a third party were in the house; Fraley was not there during the search.

Distributing 25 grams of nearly pure crystal methamphetamine weighs in favor of detention, consistent with the presumption of detention.

### 3.      Weight of the Evidence

The weight of the evidence against defendant refers to the weight of evidence of dangerousness, not the weight of evidence of defendant's guilt. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). Considering Fraley's recidivism, addiction, gang affiliation, willingness to violate conditions of parole and bond, and his distribution of 25 grams of crystal methamphetamine, the weight of evidence that defendant is a danger to the community is significant. This factor favors detention.

### 4.      Nature and Seriousness of the Danger Posed

As for the final factor, the nature and seriousness of the danger to any person or the community that would be posed by his release, he fares no better. The nature and seriousness of the danger is significant to addicts and the community. The risk here is that Fraley will continue to ignore court orders and distribute toxic drugs to others, putting users at risk of bodily harm while also harming the community. As for drug dealers, "[o]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*,

12

608 F.3d 939, 947 (6th Cir. 2010) (fn. 6). In another drug trafficking case, the Sixth Circuit observed that the defendant "victimized individuals (by selling addictive drugs to them) and the community (by making addictive drugs readily available in the area)." *United States v. Hodges*, 641 F. App'x 529, 532 (6th Cir. 2016). This factor, along with *all* of the others, also favors detention.

### Tether and Third-Party Custodian

A tether does not mitigate the risk that Fraley will continue to deal methamphetamine. While tethered, he could serially repeat his crime by simply selling methamphetamine from his house without detection. And he has been convicted of tampering with a tether once before. On December 8, 2016, he "cut his tether off[.]" and absconded. (Ex. 6). He did this after failing to charge to his tether about three weeks earlier. *Id*. Remarkably, this was not the first time Fraley cut his tether while on parole. On May 23, 2013, "Parolee Fraley cut his tether and absconded from supervision." (Ex. 7). So tethering him is an unreasonable recommendation. And a third-party custodian makes even less sense. Fraley is now 40 years old and his history and characteristics convincingly show that his behavior will not be constrained by others. If terms of parole, bond conditions, tethers, and custodial sentences have not deterred him from committing more crimes, then it is unreasonable to conclude that a third-party custodian will magically do the trick.

## III.    Conclusion

Consistent with the rebuttable presumption of detention, the Pretrial Services recommendation of detention, the government's recommendation of detention, the Magistrate's order of detention, and taking into account the § 3142(g) factors, the Court should deny Fraley's motion to revoke the detention order.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

Dated: May 19, 2021                    s/BLAINE LONGSWORTH
                                       Assistant United States Attorney
                                       600 Church Street | Flint, MI 48502-1280
                                       Phone: (810) 766-5177
                                       Fax: (810) 766-5427
                                       blaine.longsworth@usdoj.gov
                                       P55984

### ***CERTIFICATION OF SERVICE***

I hereby certify that on, May 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Jessica Stanton
United States Attorney's Office