UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.

D-1 Michael Fraley, Jr.,

        Defendant.

Case No. 21-cr-20184

Hon. Shalina D. Kumar
United States District Judge

---

### United States of America's Sentencing Memorandum

---

The numbers tell the story. This case represents, at least, defendant Michael Fraley's ninth felony conviction. That is on top of more than 30 prior misdemeanor convictions. Even after serving 27 county jail terms and four prison terms, he continues to commit more crimes. As part of his drug trafficking scheme, Fraley possessed 12 grams of pure methamphetamine with the intent to distribute when the police searched his house under a warrant. The Court's sentence for his drug trafficking conviction must account for his two decades of unrelenting criminal conduct. In light of the factors set forth in 18 U.S.C. § 3553(a), the United States seeks a sentence of 137 months' imprisonment, which is at the top of the applicable guideline range.

I.  **Sentence Considerations**

In determining defendant's sentence, the Court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by the defendant, among other factors. 18 U.S.C. § 3553(a)(2). Although advisory, the sentencing guidelines are the "starting point" and "initial benchmark" for the sentence, which should be sufficient, but not greater than necessary to comply with the purposes of § 3553(a)(2). *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38, 49 (2007).

A.  **Sentencing Guidelines Calculations.**

Fraley has pled guilty to possessing with the intent to distribute five grams or more of methamphetamine. (PSR ¶¶ 7, 9). The presentence investigation report calculates the sentencing guidelines rage at **110–137** months. (PSR ¶ 95). The government agrees with this calculation. The total offense level is 25 due to a base offense level of 28, reduced by three levels for acceptance of responsibility. (PSR ¶¶ 23, 30–32, 97). Fraley's lengthy criminal history yields a criminal history category of VI. (PSR ¶¶ 57–59). A total offense level of 25 combined with

criminal history category VI results in a guideline range of 110–137 months. (PSR ¶ 95).

### B. The Nature of the Offense.

On March 24, 2020, inside his house in Flint, Fraley knowingly possessed about 12 grams of actual methamphetamine that he intended on distributing to others. (ECF No. 91, PageID.374–75.) At this same time and place, police officers executed a search warrant. (*Id.*). As the officers entered his house, Fraley attempted to flush the baggie of methamphetamine down the toilet. (*Id.*). An officer seized the baggie and later sent it to a DEA laboratory for chemical testing. (*Id.*). A DEA forensic chemist determined that the substance was 12.4 grams of pure methamphetamine, a Schedule II controlled substance. (*Id.*).

Inside the house, officers seized drug-trafficking materials and proceeds: two digital scales, one 100-gram calibration weight, baggies and packaging materials, and $1,584 in cash. (*Id.*). Officers interviewed Fraley, who told them about his use and distribution of drugs:

> **INTERVIEW OF MICHAEL FRALEY:**
>
> Detective Gorman and I interviewed Fraley after he requested to speak with me. The following interview was recorded. I advised Fraley of his Miranda Rights and he agreed to waive them and speak to me. Fraley stated that he mostly uses drugs but did admit to selling "here and there" since January. Fraley stated that he just got out of prison and only recently started doing this. I asked Fraley how much he sells per week. Fraley should his head and I asked, "gram or two a day?" and Fraley said yes. Detective Gorman asked Fraley when was the last time he made a sale and he replied "this morning". Detective Gorman asked him "how much did you sell" and Fraley responded, "a twenty". Fraley began to tell us that he buys an "8 ball" from "Beans" on the north side of flint.
>
> I asked Fraley "did you flush the meth down the toilet when you heard us coming" and Fraley nodded his head up and down. Fraley also provided us with the passcode to his cell phone.

(Exhibit 1).

Fraley was on parole when he was drug trafficking. (PSR ¶ 58).

### C. Relevant Conduct

The PSR correctly includes the amount of methamphetamine that Fraley distributed to a confidential source ("CS") as relevant conduct. (PSR ¶¶ 14, 18, 23, 97). The guideline section for possessing methamphetamine with the intent to distribute is USSG § 2D1.1. (PSR ¶ 23). This offense encompasses both the offense of conviction *and all relevant conduct* under USSG § 1B1.3, unless a different meaning is specified. USSG § 1B.1, App. Note 1(I). The offense of conviction occurred on March 24, 2020. (PSR ¶ 7). "Relevant conduct is not limited to conduct for which the defendant has been convicted." *United States v. Maken*, 510 F.3d 654, 658 (6th Cir. 2007) (citing *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994).

Relevant conduct includes specified crimes that are similar to—but not a part of—the offense of conviction. USSG § 1B1.3(a)(2). These specified crimes, listed in USSG § 3D1.2(d) for grouping purposes, are ones in which offense levels are largely determined based on "the quantity of a substance involved." Fraley's offense is one of these specified crimes because the offense level is determined, in part, by the quantity of the substance involved under the Drug Quantity Table. USSG § 2D1.1(a)(5)(c).

For these § 2D1.1 offenses that require grouping of multiple counts under USSG § 3D1.2(d), "all acts" described in § 1B1.3(a)(1)(A) "that were part of the same course of conduct or common scheme or plan as the offense of conviction" are included as relevant conduct. USSG § 1B1.3(a)(2). For two or more offenses to constitute a common scheme or plan, they must be substantially connected to each other by at least one common factor: common victims, common accomplices, common purpose, or similar *modus operandi*. USSG §1B1.3, App. Note 5(B)(i). "As the guidelines explain, 'quantities and types of drugs not specified in the count of conviction' must be included in the drug-quantity equation 'if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.' " *United States v. Easley*, 306 Fed. Appx. 993, 995 (6th Cir. 2009) (citation omitted) (holding that the district court correctly included the defendant's

earlier drug transactions in its drug-quantity calculation based on the defendant's own description of them that "establishe[d] their similarity and regularity.").

On December 1, 2020, a CS told law enforcement officers that he could buy methamphetamine from Fraley. (PSR ¶ 14; Exhibit 2). Officers then set up a controlled buy at a house on Remington that Fraley was staying at. (*Id*.). They gave the CS money to buy methamphetamine. (*Id*.). After exchanging the money for the methamphetamine, the CS met with the officers and "advised 'Sarge' [Fraley] sold him/her the methamphetamine and that Alexandria Dodge (Allie) was present." (*Id*.). According to the laboratory report, the amount of pure methamphetamine was 25 grams. (Exhibit 2).

Officers arrested Fraley about three months later and interviewed him. (PSR ¶ 17). By his own admission, Fraley had continued to deal drugs:

> Interview with Michael Fraley: Interview typed by memory for exact wording please see the recorded interview
>
> On March 15, 2021, at approximately 8:40 a.m., Sergeant Dobbs along with Detective Orvis, interviewed Michael Fraley under Miranda at the Sheriff's Office Detective Bureau. Fraley said he understood his rights and signed the Advice of Rights form.
>
> Fraley admitted he sells methamphetamine. Fraley said he buys ounces of crystal methamphetamines from a black male who go by the street name of "Unc." Fraley admitted he sells eight balls of crystal meth for $100 and ounces for $350. Fraley said Unc sells pounds of crystal meth.
>
> Fraley admitted he also uses crystal meth and has been addicted for a couple years. Fraley said he's been trying to kick the dope but he can't. Fraley admitted Alexandria Dodge AKA "Allie" is his girlfriend and that she own the house at 1125 Remington in the City of Flint. Fraley admitted he stayed at the residence of 1125 Remington on a regular basis.

(Exhibit 3).

The evidence shows by a preponderance that Fraley distributed methamphetamine to the CS on December 1, 2020. By his own admission, eight months earlier, he was selling a gram or two of methamphetamine *daily*, leading to the search of his house. (ECF No. 91, PageID.374–75.) On December 1, 2020, the

CS immediately identified Fraley as the person who sold him the methamphetamine. (Exhibit 2). About three months later, in March 2021, Fraley admitted that he had been selling eight balls and ounces of methamphetamine, and has been addicted to it for a couple of years. (Exhibit 3). Fraley's two admissions to selling methamphetamine—on an *ongoing* basis—bookend his delivery of methamphetamine to the CS on December 1, 2020. In light of this evidence, his claim of "mere presence" is not credible. (ECF No. 112, PageID.591.)

      This evidence presents a classic case of common purpose and common scheme. In affirming the district court's finding that relevant conduct applied to admitted, non-charged acts of drug distribution, the Sixth Circuit explained that "Henderson's drug trafficking activities during 1995 and 1999 are essentially indistinguishable. According to his own statement, Henderson dealt in cocaine in 1995 up until his 1996 incarceration, and he continued to deal similarly soon after his release in 1998. The twenty-three month break in business occurred only because he was "forced to put the venture 'on hold.' " *Id*. at 1483. Under these circumstances, the district court did not err in finding that the guideline factors weigh in favor of a finding that Henderson's 1995-1996 conduct constituted the "same course of conduct" as the offenses of his conviction." *United States v. Henderson*, 17 Fed. Appx. 362, 367 (6th Cir. 2001). By Fraley's own admission, he was addicted to methamphetamine and "trying to kick the dope but he can't."

(*See also*, PSR ¶ 85). So, like many other addicts, his scheme and purpose were to sell methamphetamine to support the habit that he could not kick. The individual amounts of methamphetamine that he distributed along the way—to fund his habit—are properly understood as part of the same course of conduct. This is all strong evidence that relevant conduct applies here.

### D. History and Characteristics.

Fraley criminal history is astounding. From a broad perspective, Fraley has amassed 9 prior felony convictions and 35 prior misdemeanor ones. (Exhibit 4: 2019 State PSR, at 3)[1] (filed under seal). He has "served 27 county jail terms, four terms with the Michigan Department of Corrections and failed at community supervision both on probation and parole." (*Id*.). Exhibit 4 identifies five convictions for assault and battery. (*Id*. at 8–12). In one case he struck his ex-girlfriend "in the back of the head, causing injury." (*Id*. at 11). Exhibit 4 also shows assaultive conduct as a juvenile, and many violations of probation or parole.

Paragraphs 33–56 of Fraley's federal Presentence Report chronicle his long list of crimes. (ECF No. 100, PageID.525–542.) He has repeatedly violated terms of supervision, absconded while under supervision, and tampered with an electronic monitoring devices. (*Id*. at 533–36, 540, 542.) Over the past 20 years,

---

1. The 2019 State PSR reaches back further in time and captures more criminal history than does his federal PSR (ECF No. 100).

8

Fraley has committed aggravated domestic violence, drunk driving, resisting and obstructing arrest, larceny from a person, larceny from a motor vehicle, receiving and concealing a stolen car, among other crimes. (*Id*. at 525–542.) His conduct in prison has been concerning too. In 2017–2018, he incurred "11 misconducts while incarcerated (7 for destruction or misuse of property, 3 for interference with administration of rules and 1 for possession of dangerous contraband." (Ex. 4, at 24).

His affiliation with the Spanish Cobras gang may explain some of his eagerness to commit crimes. The CS identified Fraley as a gang member. (PSR ¶ 14). Fraley reports becoming a member in his youth. (PSR ¶ 71). He has a gang-related tattoo on his face. (PSR ¶ 76.).

His history and characteristics show an entrenched disrespect for the law and no signs of changing. His conduct shows that he is immune to deterrence. His 40+ criminal convictions require—at a minimum—a sentence within the applicable guideline range. Enough is enough. This type of sustained criminal conduct over two decades is an outlier among criminal defendants.

> **E.     Seriousness of the offense, deterrence, and protection of the public.**

Trafficking over five grams of actual methamphetamine is a serious offense carrying a minimum sentence of five years and a maximum punishment of 40 years in prison. Methamphetamine is a highly addictive and harmful substance that often

9

ruins the lives of those held in its grip. "Chronic meth users can exhibit violent behavior, anxiety, confusion, insomnia, and psychotic features including paranoia, aggression, visual and auditory hallucinations, mood disturbances, and delusions — such as the sensation of insects creeping on or under the skin." [Drug Fact Sheet: Methamphetamine (dea.gov)](). Fraley sought to fund his lifestyle and finance his addiction by distributing this poison to his customers, harming them and their families. Distribution of illegal, destructive drugs causes damage to the community: "Society as a whole is the victim when illegal drugs are being distributed in its communities." *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008); *United States v. Hodges*, 641 F. App'x 529, 532 (6th Cir. 2016).

Congress has determined that a sentence of five years in prison is the minimum any defendant should receive for distributing more than five grams of methamphetamine. Even those without a criminal history. Fraley occupies the extreme other end of this continuum. Although Fraley appears to be immune to deterrence, a 137-month sentence will show other would-be drug dealers that distributing large amounts of methamphetamine has "real" consequences, thus advancing the goal of general deterrence.

A sentence within the guidelines is necessary to promote respect for the law, provide deterrence and just punishment, and protect the public from Fraley committing additional crimes. "Not all [§ 3553(a) factors] are important in every

sentencing; often one or two prevail, while others pale." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). Protecting the public should be one of the prevailing factors here because Fraley is likely to reoffend soon after his release.

## II. Conclusion

The government recommends a sentence of 137 months based on the factors set forth in 18 U.S.C. § 3553(a). The government also requests a minimum term of four years supervision to follow any term of incarceration.

Respectfully submitted,

Dawn N. Ison
United States Attorney

Dated: July 10, 2023

*s/Blaine Longsworth*
Blaine Longsworth (P55984)
Assistant United States Attorney
210 Federal Building
600 Church Street
Flint, Michigan 48502
Telephone: (810) 766-5031
Email: blaine.longsworth@usdoj.gov

## *CERTIFICATION OF SERVICE*

I hereby certify that on, July 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Kristi Bashaw  
United States Attorney's Office